In the United States District Court

for the Southern District of New York

500 Pearl St, New York, NY 10007-1312 | 301-563-8800

Adaeze Nwosu )
*Plaintiff,* )
)
1802 Vernon Street, STE 508 )
Washington, DC,20009 )
)
v. )   Case No.
)
Brookfield Corporation )
*Brookfield Place* )
*250 Vesey Street, 15th Floor* )
*New York, NY, 10281-0221* )
*Defendant 1* )
)
Brookfield Property REIT Inc. d/b/a Brookfield )
Properties )
*Brookfield Place* )
*250 Vesey Street, 15th Floor* )
*New York, NY, 10281-0221* )
*Defendant 2* )
)
*John Doe/ LLC/In.c etc.,* )
*Defendant 3* )
)
Christina A Bryan )
515 Rusk Street, Houston Texas, 77002 )
*Defendant 4* )
)
Simeon Timothy Lake III )
515 Rusk Street, Houston Texas, 77002 )
*Defendant 5* )
)
James Chiun- Ye Ho )
600 S. Maestri Place, Suite 115 )
New Orleans, La 70130 )
*Defendant 6* )
)
Cory Todd Wilson )
600 S. Maestri Place, Suite 115, New Orleans, LA )
70130 )
*Defendant 7* )
)
Irma Camillo Ramirez )
600 S. Maestri Place, Suite 115, New Orleans, LA )
70130 )
*Defendant 8* )

1

# COMPLAINT - BREACH OF FIDUCIARY DUTY, NEGLIGENCE, FRAUD, MISREPRESENTATION, UNFAIR AND DECEPTIVE TRADE PRACTICES (TORT) AGAINST , VIOLATION OF 1983 CIVIL RIGHTS STATUTE AGAINST FEDERAL JUDGES SUED IN THEIR PRIVATE CAPACITIES

## Table of Contents

1. BACKGROUND OF PARTIES .......................................................................... 3

2. BASIS OF JURISDICTION ............................................................................. 5

3. CASE BACKGROUND ................................................................................... 7

4. STATEMENT OF CLAIMS/ PLAINTIFF'S AFFIDAVIT IN SUPPORT OF HER ENSUING CLAIMS AGAINST DEFENDANTS 1 AND 2 OF FRAUD, NEGLIGENCE, VIOLATION OF THE TEXAS OCCUPATIONAL CODE, VIOLATION OF CONSUMER PROTECTION ACTS .................. 9

5. DEFENDANTS 1 AND 2'S VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES – CONSUMER PROTECTION ACT ("DTPA"). .................................................... 14

6. BREACH OF BUSINESS & COMMERCIAL CODE 27.01 AND FRAUD AGAINST DEFENDANTS 1 AND 2 ................................................................................ 17

7. BREACH OF TEXAS OCCUPATIONAL CODE 1101.652/3 PROFESSIONAL NEGLIGENCE AGAINST DEFENDANTS 1 AND 2 ................................................................. 19

8. NEGLIGENCE AGAINST DEFENDANTS 1 AND 2 ............................................. 19

9. COLOR OF LAW VIOLATION AGAINST DEFENDANTS 4-8 ................................. 21

11. DAMAGES IN RESPECT TO CLAIMS AND DEFENDANTS ABOVE ........................ 25

12. RELIEF ................................................................................................... 25

## 1. *Background of Parties*

1.1. Ms Nwosu (Plaintiff) is an international businesswoman, maintaining a portfolio of global businesses across the hospitality, luxury lifestyle and marketing industries. She has sought to expand her commercial endeavour into *the Highlight,* located at 1331 Lamar Street, Houston, Texas, 77010, Unit 114, where she sought to lease a 5673 square feet location "the space," for her art gallery and café commercial concept "the concept," alongside her café business partners.

1.2. Jolink Wallace Interests LLC is the broker for the Defendants 1 and 2 and attempted to broker a deal with the plaintiff for the *Highlight,* a property owned and operated by defendant 1 and 2, located in downtown Houston Texas. The defendants 1 and 2 own billions of dollars in residential and commercial real estate and are headquartered in the state of New York. Defendants 1 and 2 shall be collectively referred to as "Brookfield" or "Brookfield Properties" or the "landlord" in this suit. They have multiple subsidiaries, including Brookfield Properties (**USA II**) LLC, which is incorporated and engages in substantive lobbying activities in the state of

New     York,     hence     John     Doe     Defendants     provision

The data on this site was last updated on 08/31/2024.

To learn whether an individual or entity listed in the Doing Business Database has made a campaign contribution, visit the NYC Campaign Finance Board's Searchable Campaign Finance Database. For more details concerning lobbyists and their clients, visit NYC Lobbyist Search site.

For more information about Doing Business start dates and types, select EntityReport, IndividualReport or Download All Data.

Related people for this entity are listed below:

| Relationship | Name | Start Date |
|---|---|---|
| LOBBYIST | DAVID, MCBRIDE | 04/01/2024 |
| LOBBYIST | MONTROSS, LAURA | 01/01/2024 |
| LOBBYIST | LISCIO, ALEX | 12/01/2023 |
| LOBBYIST | NATHAN, JAKE | 12/01/2023 |
| LOBBYIST | GRAHAM, ANDREW | 04/01/2024 |
| LOBBYIST | PEYTON, ELDER | 04/01/2024 |
| LOBBYIST | BRENT, ANDREW | 01/01/2024 |
| LOBBYIST | MASSEY, P.J | 04/01/2024 |
| LOBBYIST | MCCUAIG, DUNCAN | 04/01/2024 |
| LOBBYIST | CAPERNA, DAVID | 04/01/2024 |
| LOBBYIST | COOPERMAN, JESSE | 01/01/2024 |
| LOBBYIST | HAINES, CALLIE | 12/01/2023 |

1.3. Defendants 4 - 7 are sitting federal judges in the Southern District of Texas and Appellate Court for the 5th Circuit presiding over a claim of unfair business practices and fraud brought by the plaintiff against the Brookfield's broker's Jolink Wallace defendants et al. The plaintiff alleges these broken the law, under color of law to deny the plaintiff a right to a fair hearing, and so the broker can get away scotch free with their torts of fraudulent misrepresentation among others. The plaintiff sues defendants in the personal capacities for civil rights and constitutional violations deprivations to the plaintiff under Section 1983 of 42 U.S.C.

4

## 2. *Basis of Jurisdiction*

### 2.1. *Federal Question*

The plaintiff brings this action pursuant to Federal Rules of Civil Procedure, 28 USC § 1331, Federal question where some of the claims involve violations of federal and constitutional statutes and abuse of office under color of law by sitting judges.

### 2.2. *Appropriateness of Venue*

2.2.1. Venue in New York Federal court is proper as Brookfield Properties is headquartered in New York. Owners are held ostensibly and vicariously liable for the actions of their subsidiaries / agents/ employees such as their brokers/agents Jolink Wallace LLC, and Radkey Jolink in Houston Texas, United States, who committed the torts.

2.2.2. The other defendants are federal judges, sued in their **private capacity**, under federal color of law provisions, and can be sued/haled into any Federal District Court in relation to the torts committed, where their actions would foreseeably have effects, like in this case New York.

2.2.3. Under New York law, the court can exert personal jurisdiction over the defendants because NY Code 302 - Personal Jurisdiction by Acts of Non-Domiciliary states:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

(1)"transacts any business within the state or contracts anywhere to supply goods or services in the state;" or

(3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or <u>solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state</u>, or

(ii) <u>expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce</u>; or

2.2.4. "Use or possesses any real property situated within the state of New York, being headquartered there."

2.2.5. All defendants fulifll this long arm statute of New York; the defendants 4 -8 especially with regards to 302(3)(ii)

### 2.3. *Choice of Law*

2.3.1. Because the torts by defendants 1 and 2's agents were committed in Texas, the plaintiff uses the applicable Texas laws and statutes. These laws, like the New York. consumer protection act, licensing are universal across most states, and are similar.

2.3.2. Where applicable, the Plaintiff uses common and federal law to these United States such as Fraud and Negligence

2.3.3. She also invokes Federal law against the federal employees

### 2.4. *Exhaustion of Administrative Remedies*

2.4.1. The plaintiff for good cause shown and in the interest of justice needn't exhaust her administrative remedies, it's been nearly 6 months since the filing of her original casse against the defendants 1 and 2's brokers in Texas and which were stalled by defendants 4 and 5.

### 3. *Case Background*

3.1. In December 2024, the plaintiff saw an advertisement for a commercial retail space for lease in opposite the Four Seasons Hotel, where she was temporarily residing. She came back to Houston and paid $8000 each month in rent expense with the intention of leasing the gallery space, engaging with contractors and architects to outfit the space. The project was forecasted to take 1 year, and cost between $200,000.00 - $500,000.00. The gallery café would have launched in January/February of 2025.

3.2. Jolink Wallace Interests LLC advertised as the brokers for the space for Brookfield Properties.

3.3. On/Around January 2nd 2024, the plaintiff reached out to Brookfield's property broker, Radkey Jolink by phone and email, stating her interest in viewing the space

3.4. On January 5th 2024, the plaintiff viewed the space with Brookfield's broker and deemed the space suitable for her art gallery – café commercial endeavor/ concept.

3.5. On January 24 2024, the plaintiff entered into a contract agreement and paid architects CDGAI to evaluate the cost of demolishing existing structures within the space and providing a demo/preliminary cost for her commercial concept.

3.6. The plaintiff officially sent to Brookfield's broker, her Letter of Intent to Lease the space on February 23rd 2024 for the landlords to countersign.

3.7. On February 26th 2024, Mr Jolink sent back a letter of intent to countersign.

3.8. On March 7th 2024, the plaintiff met with architects in person in Houston Texas, to discuss the costs of the project and the architects sent their contract to the plaintiff for signing to officially kick off the project on March 8th 2024. The plaintiff mentioned she would put off signing architectural contracts until she had negotiated and signed a lease agreement with the landlords of the space, and advised them should try to resolve contracts speedily.

3.9.  At all material times, the brokers, Jolink Wallace, represented by Mr Jolink were aware that the plaintiff fully intended to lease the space and the defendant had expressed its desire of the plaintiff to lease the space to her, for her concept and expressed eagerness with moving the project along.

3.10. However, when Mr Jolink fraudulently misrepresented facts concerning the process of leasing the space to the plaintiff as a consumer, and misrepresented that he had taken certain steps, which in fact he had not, and tried to <u>fraudulently induce</u> the plaintiff into signing a contract that would be disadvantageous to her.

3.11. This tussle between Brookfield's broker and the plaintiff caused undue delay to the plaintiff's project, and the plaintiff became weary of the apparent delay on the part of the brokers in precluding her from leasing the space in which she was interested.

3.12. On March 29th 2024 the plaintiff discovered misrepresentational tactics employed by the brokers when she attempted to negotiate a lease contract.

3.13. Ultimately the misrepresentations culminated in a lawsuit filed on April 9 2024 in the Southern District of Texas.

3.14. The landlords/Brookfield properties were aware of this entire slowdown to the plaintiff's objectives, and did not provide any affirmative action to resolve any steps, even after the suit against their agent had been initiated, which they necessarily knew about because the plaintiff informed them, specifically Jen Coriale who took over Brookfield's retail leasing in Houston on April 24th 2024, and knew of the project.

4. *Statement of Claims/ Plaintiff's Affidavit in Support of her ensuing claims against defendants 1 and 2 of fraud, negligence, violation of the Texas Occupational Code, Violation of Consumer Protection Acts.*

The plaintiff provides the following statement of claim in support of her claims over the defendants 1 and 2, which are held vicariously and/or ostensibly liable for the actions of their brokers/ agents, Jolink Wallace LLC and Radkey Jolink:

4.1. After the plaintiff expressed her intention to lease the space in January 2024 to the defendant, she engaged CDGAI architects contractually to inspect and conduct a demolition cost of the space and a demo "build out" for the client (**EXHIBIT A).**

4.2. During this period in February 2024, the defendant repeatedly granted the plaintiff's architects and contractors access to the space to view and assess the space.

4.3. On **February 23rd 2024** the plaintiff sent her letter of intent to Radkey Jolink of Jolinnk Wallace, LLC (**EXHIBIT B)**, stating her intent to lease the place and provide a time for exclusivity, whereby the realtors would not engage prospective lessors, as the plaintiff undergoes expenses to obtain the cost of the project, and negotiates the project.

4.4. On February 26th 2024, Mr Jolink sent his counter letter of intent, aka a term sheet for the plaintiff to fill and sign.

4.5. On March 4th 2024, the plaintiff explained to the defendant that the "term sheet" was more detailed and the plaintiff expressed she could not fill out this letter of intent because the space was not new and there were still many unknowns such as costs from the builders for the cost of demolitions.

4.6. She asked the defendant sign her straightforward letter of intent to lease and then go into contract negotiations straight. The plaintiff asked for a sample contract at this time to review.

4.7. Mr Jolink **evaded** the plaintiff's request to sign her letter of intent and did not also heed the plaintiff's request for a sample contract.

4.8. On March 14 2024, the plaintiff was ready to move forward on the project and yet again requested a sample contract from the defendant, having

gotten an estimated cost from the builders. She asked to meet with the Mr Jolink in person to clarify some contractual terms.

4.9. On March 19 2024, the plaintiff met with the defendant and the defendant yet again provided his basic term sheet, which the plaintiff had initially rejected.

4.10. The plaintiff expressed she would still like to see a sample contract from the landlord of an existing or previous tenant, with any necessary redactions protecting confidential information, and have the defendants/landlords sign the LOI in the interim, pending the finalization of a contract.

4.11.    Mr Jolink refused to both consider the plaintiff's letter of intent or share a contract. He stated that the landlords of the space would not sign the plaintiff's letter of intent to lease because it was not on the "**landlord's / [defendants 1 and 2's] letterhead**," and that the landlords do not sign anything that is not the **landlord's** letterhead, because they are a big company.

4.12.    Though Mr Jolink represented as though he was going to ask the landlord/ defendants 1 and 2 for a sample contract in his emails to the plaintiff, the plaintiff ascertained that he **never did though he promised**. <u>This was the first fraudulent misrepresentation upon which the plaintiff relied to hers and the project's detriment.</u>

4.13.    Mr Jolink instead made guaranteed to the plaintiff that they were considering only her for the space and really wanted her to be in the space, but she had to abide by the landlord's term sheet, *first*.

4.14. After their meeting on March 19 2024, the plaintiff sent another email requesting a redacted draft contract of either a historical or current tenant so she could she better understand how the terms apply, especially given that the space is not new.

4.15. **Mr Jolink again represented that he would "push" with the landlords to obtain a sample contract that is redacted, but never actually did. Instead he kept steering the plaintiff to sign the term sheet "blind," i.e. without being fully informed.**

4.16. On March 29th 2024, when the plaintiff asked Mr Jolink for **evidence** of his assertions that:

      *I.* Mr Jolink had contacted the landlord for a sample contract;

      *II.* Mr Jolink had presented her letter of intent to lease to the landlords and,

      *III.* Mr Jolink received correspondence that the landlords refused to sign the contract because it was not on their letterhead,

4.17. **Mr Jolink did not provide any evidence and kept silent instead.**

4.18. On March 29 2024, the plaintiff realized the term sheet he had provided was on the **broker's** (defendants) letterhead, not the highlight, so Mr Jolink's assertions that the company only signs documents that are on their company's letterhead was evidently **false.**

4.19. **The defendants misrepresented facts and caused confusion to the plaintiff as to the source of their authority vis a vis the landlord, the source of the term sheet, and speaking on behalf of the landlord, without actually presenting the plaintiff's position and having the authority of the landlord, and also making promises that they never intended to keep, and evidently did not keep.**

4.20. The plaintiff thus avers that the defendant's 1 ad 2's agents misrepresented facts to her to coerce her into proceeding to sing a term sheet she was not comfortable with, or informed to sign.

4.21. The plaintiff claims that the defendant's misrepresentations of facts/ fraud were done in bad faith, and **a breach of his fiduciary duties** to her as a broker, because even when the plaintiff wrote that part of the reason, she wanted to see a sample contract was to:

      I. Avoid delays and **mental fatigue, burden and anguish associated with protracted back and forth negotiations of a contract**

      II. Avoid investor risk by showing her personal assets early on as part of the negotiation process

4.22. The defendant persisted in trying to coerce her/ fraudulently induce her to sign a contract that she had explained in writing was against her

interest. Thus plaintiff states that these actions by the defendant to protract and delay the plaintiff's case were in bad faith.

4.23. As a result of the misrepresentation, breach of fiduciary duties *inter alia,* the plaintiff has suffered delays in her project, wasted the time of other professionals involved, including her business partners and architects and losses in her ongoing online businesses which she had forecasted to stop, and has stopped to pivot to brick and mortar outfits.

4.24. On March 29 2024, the plaintiff realized she was being deceived, defrauded when she discovered the defendants messages to her were contradictory( EXHIBIT D).

4.24.1.    On/around March 27th 2024 for example, the defendants had given her an ultimatum to  send a counter letter of intent or sign their term sheet, meanwhile she has sent her letter of intent as early as February 23rd 2024, and they disregarded it because it was not signable since it was not on the landlord's letterhead.

4.24.2.    With regards to the contract she had requested to view, the defendant kept changing their excuse for not providing one, yet making as though they actually contacted the landlord. For example at one point they mentioned the landlords would not provide a sample contract because of confidentiality of existing tenants, another time it was because they did not wish to spend attorney's fees, and yet another time, it was because of specificity to the plaintiff's concept that they could not send a draft (redacted) and/or sample contract so the plaintiff could assess the general verbiage (EXHIBIT D). This caused the plaintiff to become mentally exhausted, frustrated and anguished.

4.25. The plaintiff avers the defendants, who were acting in the capacity of her brokers, broke the fiduciary duty to her by lying, concealing matters of material import, and misrepresenting facts to her. The plaintiff attests that she had no other brokers throughout the course of her seeking a lease at the space, negotiating a lease contract and/or initiating the negotiating a lease for the space, besides the defendant.

4.26. The plaintiff further avers that the defendant violated the professional fiduciary duties to her and acted negligently by concealing truths and misrepresenting facts, and ultimately delaying her project.

5. *Defendants 1 and 2's Violation of the Texas Deceptive Trade Practices – Consumer Protection Act ("DTPA").*

The plaintiff uses the Texas DTPA claims which are similar to New York's state Consumer Protection Act in verbiage, Chapter 307 Section 349

5.1. The plaintiff brings this claim of unlawful deceptive trade practices under the Texas Deceptive Trade Practices – Consumer Protection Act ("DTPA").

5.2. The DTPA provides that *"false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."*

5.3. The plaintiff is entitled to protection under the DTPA as a consumer seeking a lease of a commercial building through the defendants 1 and 2.

    5.3.1. According to the DTPA and like the New York's Cosnsumer Protection Act The phrase "consumer" means an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease any goods or services.

    5.3.2. The plaintiff can bring this claim under the DTPA because she was not seeking opinions, or professional advice, judgment but was a consumer attempting to transact a lease for her benefit, and such practices are covered by the DTPA.

5.4. The plaintiff can bring a claim under the DTPA because the consumer's claim must relate to *consumer goods and/or services,* which her claim supports as it pertains to a real estate *commercial* lease, and in any case, the issue of whether or not real estate is a consumer good subject to DTPA remedies was resolved long ago. It is. *Chastain v. Koonce,* 700 S.W.2d 579, 582 (Tex. 1985). The definition of consumer good includes just about everything except intangibles such as accounts receivable, stock, and money.

5.5. The plaintiff can bring this claim under the DTPA because it is not required that the she, the consumer actually pay for the goods or services in question—only that the consumer must be seeking or in the process of acquiring them by means of either purchase or lease. *Martin v. Lou Poliquin*

*Enterprises, Inc.,* 696 S.W.2d 180 (Tex.App.—Houston [14th Dist.] 1985).
Under the DTPA, it is required only that the consumer be the intended
beneficiary of goods or services. *Arthur Anderson & Co. v. Perry Equip.
Corp.*, 945 S.W.2d 812, 815 (Tex. 1997), which she indeed was going to be:

5.5.1. The plaintiff is the intended beneficiary of the goods and services and
mentioned to the defendants 1 and 2 that she would be signing the
lease and be the guarantor for the lease. In fact , it was the plaintiff's
personal bank statements which she would have provided to show that
she had the rental funds for the lease and build out etc, since she would
have to reguster a new entity for conducting business specifically in
Texas.

5.6. The plaintiff can further bring this claim because under the DTPA because
it not even a requirement that the consumer be in privity (in a direct
contractual or business relationship) with the defendant 1 and 2—only that
the claimed violation *occurred in connection with* the consumer's
transaction. *Amstad v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).
*"The connection can be demonstrated by a representation that reaches the
consumer or by a benefit from the second transaction to the initial
seller." Todd v. Perry Homes*, 156 S.W.3d 919, 922 (Tex.App.—Dallas 2005,
no pet.).

5.7. This is a claim, upon which monetary relief, can be granted to the plaintiff
because

5.7.1. According to the Texas Supreme Court, it is not even a requirement
that harm to a potential buyer be foreseeable. *Helena Chem. Co. v.
Wilkins*, 47 S.W.3d 486 (Tex. 2001). All that is required is that a seller's
dishonesty be a producing cause of harm, perhaps one of several such
causes. Foreseeability of harm is *not* required. Intent to harm
is *not* required. A reasonable prospect that harm might occur
is *not* required.

5.8. The Plaintiff's claims of misrepresentation are covered under the DTPA
under section 17.46(b)(2) whereby the defendants 1 and 2 through the action
of its brokers caused confusion, misunderstanding as to the *"source,*

*sponsorship, approval, or certification of goods or services regarding the origin, sponsorship, and endorsement"* of their term sheet/ letter of intent to lease **(EXHIBIT C),** holding it out to be that of the landlord's until the plaintiff realized the said term sheet was on the defendant's agent company letterhead. For clarity, the defendant's agent had held out to the plaintiff that the landlords would not sign her letter of intent to lease because it was not on the landlord's letterhead, meanwhile the term sheet they were coercing her to sign was not on the landlord's letterhead instead.

5.9. The plaintiff also brings this claim of unlawful deceptive trade practices pursuant to 17.46(b)(14) whereby it is unlawful to for the defendants 1 and 2 or its agents to

    5.9.1. *"misrepresent the authority of as as a salesman/ representative or agent to negotiate the final terms of a consumer transaction."* **Accordingly, part of the basis of the plaintiff's claim is that the defendants provided no evidence upon the plaintiff's request, to show that their positions were indeed reflective of their landlord's positions to not sign her letter of intent, provide an exlcusivity period for contract negotiations, and/or send a sample contract to enable her fill out term sheet, within the context of contractual verbiage and mitigate a protracted negotiation process.**

5.10.     Additionally, the misrepresentations by the defendants 1 and 2 and/or its agents, including the defendant's agent's insistence of a fictitious lease process by the landlords and postulating that the landlords refused her letter of intent to lease, and refused to send a sample/pre-existing contract, without any evidence attesting to the landlord's position, is a violation of the consumer protection act. Furthermore, the defendant's and 2's agent also caused her confusion about the actual processes for obtaining a lease, negotiating a contract etc with the defendants and fulfills the unlawful acts under the DTPA:

    5.10.1.     The law states *all the consumers must show is that the defendant caused confusion regarding the source of the goods and*

*services. [This section also] prohibits acts that cause confusion regarding the sponsorship, approval, or certification of goods or services. It prohibits people from representing a product has the approval of an organization that has not really approved it. Certification is a formal process that often has significant meaning to consumers."*

5.11. *Timing under the DTPA* - The Plaintiff timely files this suit, circumventing the Notice of Inspection pursuant to rule Bus. & Com. Code Sec.17.505. Notice; Inspection (b),  to prevent the loss of the space to another commercial tenant, as the plaintiff's interest in the space has not wavered, only that her desire to continue to contract with the defendants  has waned, especially since the plaintiff notified the defendant of their deceptive practices on March 29 2024 and they did nothing even remotely indicative of being willing to provide restitution. (EXHIBIT D) **Thus, the defendants have effectively blocked the plaintiff from proceeding with the project and thus necessating this suit.**

## 6. *Breach of  Business & Commercial Code 27.01 and  Fraud  against Defendants 1 and 2*

6.1. The plaintiff also brings her claim of Fraud in Real Estate and Stock Transactions pursuant to rule 27.01(a) whereby the plaintiff asserts the defendant's 1 and  2's broker made a

6.1.1. *"(a)  (1) false representation of a past or existing material fact, when the false representation is (A) made to a person for the purpose of inducing that person to enter into a contract (i.e. the lease term); and*

6.1.2. *(B) relied on by that person in entering into that contract, or (2) false promise to do an act, when the false promise is (A) material;(B) made with the intention of not fulfilling it;(C) made to a person for the purpose of inducing that person to enter into a contract; and(D) relied on by that person in entering into that contract:"*

6.1.2.1.   As elaborated above, the plaintiff justly brings this claim of fraud against the defendant's broker because they promised to ask the landlords about the plaintiff's request of, including, but not limited to signing her letter of intent to lease, which she had sent as early as February 23rd as well as asking them to provide a sample (redacted) contract, meanwhile, they did not. The plaintiff relied on this information to her detriment, was unable to proceed in negotiations of the contract with defendants 1 and 2, or proceed on the project.

6.1.2.2.   **The defendants' 1 and 2's brokers thus made a promise with the intention of not fulfilling it so that the plaintiff may sign their terms sheet and enter into a contract.**

6.2. The act in subsection 27.01(b) states the basis of the plaintiff's claim and relief is summized thus under this rule:

6.2.1. **(b)** A person who makes a false representation or false promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for actual damages.

6.2.2. **(c)** A person who makes a false representation or false promise with actual awareness of the falsity thereof commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

7. *Breach of Texas Occupational Code 1101.652/3 professional negligence against defendants 1 and 2*

7.1. The plaintiffs avers her statement of claims against the defendant's 1 and 2 brokers for misrepresentation *inter alia,* also falls violates professional negligence statutes and thus brings her claim for nigeligent misrepresention According to Tex. Occ. Code 1101.652, which states an agent (broker) may be disciplined when he:

(1) acts negligently or incompetently;

(2) engages in conduct that is dishonest or in bad faith or that demonstrates untrustworthiness;

(3) makes a material misrepresentation to a potential buyer/lessor

(5) makes a false promise that is likely to influence a person to enter into an agreement when the license holder is unable or does not intend to keep the promise;

(6) pursues a continued and flagrant course of misrepresentation or makes false promises through an agent or sales agent, through advertising, or otherwise;

## 8. *Negligence against Defendants 1 and 2*

8.1. The landlords/ defendants 1 and 2 have a duty to the plaintiff or any of the plaintiff's to ensure their broker is honest and in is not found/alleged to be out of compliance with Sec. 1101.653. GROUNDS FOR SUSPENSION OR REVOCATION OF CERTIFICATE, wherein "The commission may suspend or revoke a certificate of registration issued under this chapter if the certificate holder:

(1) engages in dishonest dealing, fraud, unlawful discrimination, or a deceptive act;

(2) makes a misrepresentation;

(3) acts in bad faith;

(4) demonstrates untrustworthiness;" but failed in upholding this duty

19

8.2. The plaintiff brings a claim of negligence against defendants 1 and 2, for not providing the plaintiff with alternative brokers or taking adequate remedial action after discovering the suit and/or the misreprsentations their agents made. As a result the plaintiff, who, and her business partner are still willing to rent the space and expand in Houston has lost out on reasonably forecasted income, wasted rent and travel expense, professional fees expenses, advancement in business project and has had to completely stop buildouts with the CDGAI architects and just thoroughly wasted everyone's time.

8.3. The plaintiff avers there were no  settlement attempts to find a pathway forward at all by the landlords and the landlords were perfectly happy to callously look away instead of fulfil their duty of care to the plaintiff to ensure they employed/contracted an honest agent/broker in line with the ***Texas Occupational Code 1101.652.***

### 9. *Color of Law Violation against Defendants 4-8*

1.1. Section 1983 of 42 U.S.C. states as follows: "Every person who, under color of any statute,   ordinance, regulation, custom, or usage, of any   State or Territory or the District of Columbia,   subjects, or causes to be subjected, any citizen of   the United States or other person within the   jurisdiction thereof to the deprivation of any   rights, privileges, or immunities secured by the   Constitution and laws, shall be liable to the party   injured in an action at law, Suit in equity, or   other proper proceeding for redress..."

1.2. To establish a claim pursuant to Section 1983, a plaintiff must "demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that alleged deprivation was committed by a person acting under the color of state law." *Id.*

1.3. To state a Section 1983 claim, the plaintiff is required to allege that (1) the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived the plaintiff of a constitutional right.

1.4. By its terms, Section 1983 can be used to remedy the deprivation of "rights" granted to the plaintiff under the Constitution, federal statutes, and regulations implementing these statutes.

1.5. In *Maine v. Thiboutot,* the Supreme Court held for the first time that Section 1983 could be used to remedy the deprivation of rights created by a federal statute.

1.6. *In Wright v. Roanoke Redevelopment and Housing Authority,* the Supreme Court suggested that a regulation promulgated to interpret a federal statute could also be a "law" which could be enforced under Section 1983.

1.7. When Ms Nwosu filed her suit (see exhibit) against Brookfield's brokers / agents on, April 09 2024 in the Southern District of Texas, located at 515 Rusk Street, the case was assigned to Judge Sim Lake. The initial hearing date was set for June 28 2024 at 3pm under case No: 4-24-CV-01293. Judge Sim Lake postponed the case without reason until August 12 2024, likely

he had no interest in the case and referred the case to a magistrate judge, Christina A Bryan, defendant 4. All parties in that suit, Ms Nwosu and the defendants exercised their rights to decline consent to a magistrate judge, Pursuant to Federal Rules of Civil Procedure Rule 73, a magistrate may only conduct civil action or proceedings when **all** parties consent. In this case, as noted on the docket sheet, **all parties did not consent to a magistrate judge.** On 25 June 2024, Ms Nwosu filed a motion for summary judgment with injucntive relief. According to the federal rules of civil procedure, magistrate judges do not have authority to rule on summary judgments **/dispositive motions or provide injunctive relief.** Yet judge Sim Lake referred the plaintiff's motion for summary judgement to Magistrate. Though the plaintiff protested Judge Bryan didn't care, she declined to step down/ reassign the case, instead she began prejudicially carrying out the motive of herself and judge Sim Lake to use color of law to dismiss the case.

1.8. Though Ms Nwosu filed an interlocutory appeal as of right to the 5th Circuit court of appeals for a restraining order against Judge Bryan and Sim Lake who were acting in reckless disregard for the law and Judge Bryan using their offices to conduct hearings over the plaintiff's case she had no legal authority to hear,. Unfortunately the 5th circuit, an appellate court that has broad discretion to hearinterlocutory orders  pursuant to federal rule 1292(a)(1), declined jurisdicition without giving a memorandum opinion. The plaintiff, sensing the recalcitrance of the former southerns slave owner/confederate states to grant her a "black" plaintiff, victory over a white defendants, when the evidence is so clear, is sadly reminiscent of the post-reconstruction era, jim crow erra when black people had rights but not *really* as seen in cases like ***Screws v. United States***, 325 U.S. 91 (1945). This was a case in wherein 1945 the Supreme Court case justices, much like Sim lake and Bryan, jettisoned consitutional provisions, federal rules and statutes,  and justified through excuse, inaction and lies, local government officials killing African-Americans in an extra-judicial manner, essentially color of law violations, but with barbarity and reckless disregard for people

of a certain race, the law, and its consequences on the permissive message it sends to others to continue in their oppressive antics.

1.9. Ms Nwosu asserts that declining her interlocutory appeal on the basis of lack of jurisdicition and citing only certain orders are allowed from the provision under Federal rule 1292(a)(1) *is*　as color of law violation. Provision 1292(a)(1) does not provide any direction as to which orders may be brought as it does in rules a(2) and (3). Thus to dismiss the plaintiff's appeal for lack of jurisdiction is inappropriate and constitutes an abuse of discretion that intentionally misinterpretes/ recklessly disregards the inention of the law to deprive the plaintiff a basic right to a fair proceeding, and permit judges Sim Lake's and judges Bryan tortuous abuses of judicial authority to deprive the plaintiff her summary judgment. In her personal experience, Ms Nwosu have seen appellate courts take interlocutory appeals to restrain judges from abusing parties' consitutional rights. Case law also supports her personal experience: Johnson v. Jones, 515, US 304 (1995) at *310* states: "Of course, sometimes interlocutory appellate review has important countervailing benefits. <u>In certain cases, it may avoid injustice by quickly correcting a trial court's error.</u> It can simplify, or more appropriately direct, the future course of litigation. And, it can thereby reduce the burdens of future proceedings, perhaps freeing a party from those burdens entirely. Congress consequently has authorized, through other statutory provisions, immediate appeals (or has empowered courts to authorize immediate appeals) in certain classes of cases—<u>classes in which these countervailing benefits may well predominate</u>...See 28 U. S. C. § 1292 (immediate appeal of, *e. g.,* orders granting or denying injunctions; authority to "certify" certain important legal questions)."

1.10.　To preclude unecessary defences claiming qualified immunity for the judges in this case the plaintiff preemptively cites <u>*Harlow* v. *Fitzgerald,* 457 U. S. 800, 818 (1982)</u> (holding that public officials are entitled to a "qualified immunity" from "liability for civil damages insofar as their conduct does not violate clearly established . . . rights of which a reasonable person would have known." Here the

judges/defendants knew that when they gave an order dismissing the plainitff's case for lack of jurisdiction over interlocutory orders pursuant to rule 1292, it clearly violated the plaintiff's constitutional rights to a fair hearing, under the 14th amendment.

1.11.    Effectively what these judges have done under color of law is also obstruct the plaintiff's justiciable recourse to fraud and fraudulent misrepresentations precluding her from generating wealth honestly as a black woman The judges should be ashamed that they would be so prejudiced against the black plaintiff to condone fraud perpetuated by white defendants, and go as far as to violate constituonal provisions through indifference and inaction, under color of law, than let a black woman generate just wealth through hardwork. The plaintiff has had to halt her business plans, forego revenue for almost 9 months and this delay in judicial recourse would set her back at least 2 years, and that's at least two years lost in revenue, not including the expenses and investments she put into the developing, researching and building partnerships for the business in the first instance.

## 10. Gross Negligence against defendants 5 -8

10.1.    The plaintiff brings the tort claim of gross negligence against judges Sim Lake and Bryan for holding the constitution, federal rules and statutes in utter contempt and breaching their duity to the plaintiff as a member of the public and beneficiary of the U.S. constitution which the vowed to uphold. This is a tort in their personal capacity, they have no grounding in law or judicial authority / discretion; they are plainly acting in absence of all jurisdiction to deliver a backdoor yet illicit win for the defendants in case 4-24-CV-01293. As a proximate result, and as mentioned above the plaintiff has suffered undue delay and prejudice , and been deprived of a fair hearing. You've also lost a constitutional provision to <u>liberty</u> to generate wealth, which implicitly having a monetary upon which, which she can generate wealth.

### 11. *Damages in respect to claims and defendants above*

11.1.     The plaintiff avers that she suffered damages in forecasted income, actual expenses and actual monetary losses in proximate relation to the claims enumerated above against said defendants. For example. Ms Nwosu who had projected to be completely brick and mortar did not renew contracts with/curate new artists in her online art store, and had planned to cease online presence in 2024 to focus on brick and mortar build outs; so her online art business has also suffered in revenue from ceasing ontime as planned, but being unduly delayed by the courts and judges and corporate defendants. Given that defendants 5 – 8 knew the consequences at stake having reveiewd the case, blocking the plaintiff's rights to a fair hearing through tortuous indifirence, disregard for due process, under color of law, also makes them proximately liable for the plaintiff's sufferings in their private capacity.

### 12. *Relief*

12.1.     Wherefore the plaintiff is seeking compensation and punitive damages for the torts, for the applicable defendants listed in this case,  in excess of 100,000,000, i.e. one hundred million dollars

12.2.     The plaintiff also seeks injunctive reliefs, restraining judges where appropriate and enjoining orders that were unconstitutionally ordered in 4-24-CV-01293

12.3.     The plaintiff also seeks the reliefs in her summary judgment in case 4-24-CV-01293

12.4.     Counsel for the removal of these judges from office through writs of quo warranto, recommendations of impeachment from judicial office, etc.

12.5.     The plaintiff prays for all other relief in her favor that this court may grant and also prays for general relief.

Respectfully Submitted

*[signature]*

Adaeze Nwosu, In Pro Per

1802 Vernon Street

Washington, DC, Suite 508

ireoma@gmail.com

Certificate of Service

I certify that I served the following complaint on the following for the defendants via certified priority mail:

Brookfield Properties and Brookfield Property REIT Inc.

250 Vesey Street, 15th Floor. New York, NY 10281

*And in their private capacity*

Sim Lake and  Christina A Bryan

515      Rusk Street, Houston Texas, 77002

James Chiun- Ye Ho, Cory Todd Wilson, Irma Camillo Ramirez
600 S. Maestri Place, Suite 115, New Orleans, LA 70130

*[signature]*

Adaeze Nwosu, In Pro Per

1802 Vernon Street

Washington, DC, Suite 508

ireoma@gmail.com